**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | |
|---|---|
| Intellectual Ventures I LLC and Intellectual Ventures II LLC, | |
| Plaintiff, | Civil Action No. 6:21-cv-226 |
| v. | JURY TRIAL DEMANDED |
| Hewlett Packard Enterprise Co., | |
| Defendant. | |

**DEFENDANT HEWLETT PACKARD ENTERPRISE COMPANY'S MOTION
TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)**

## <u>TABLE OF CONTENTS</u>

**Page**

I.      INTRODUCTION ................................................................................................1

II.     FACTS .................................................................................................................1

        A.      IV and the Third-Party Inventors. ...............................................................2

        B.      Hewlett Packard Enterprise Company .........................................................2

        C.      IV's Infringement Claims Against HPE and Features Supplied by Third
                Parties ...........................................................................................................3

III.    LEGAL STANDARD ..........................................................................................6

IV.     ARGUMENT .......................................................................................................8

        A.      This Case Could Have Been Filed in NDCA. ..............................................8

        B.      The Private Interest Factors Favor Transfer to NDCA. ..............................8

                1.      The Relative Ease Of Access To Sources Of Proof Strongly Favors
                        Transfer to NDCA .............................................................................8

                2.      The Availability of Compulsory Process Strongly Favors Transfer. .........10

                3.      The Attendance of Willing Witnesses Strongly Favors Transfer. ............11

                4.      The "All Other Practical Problems" Factor Is Neutral Or Slightly
                        Favors Transfer. ...............................................................................13

        C.      The Public Interest Factors Favor Transfer to NDCA. ..............................13

                1.      There Are No Administrative Difficulties Stemming from Court
                        Congestion that Weigh Against Transfer to NDCA. ...............................13

                2.      The Local Interest Factor Favors Transfer to NDCA. ............................14

                3.      Familiarity With The Governing Law And Conflicts Of Law Are
                        Neutral ..............................................................................................15

V.      CONCLUSION ...................................................................................................15

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adaptix, Inc. v. HTC Corp.*,
   937 F. Supp. 2d 867 (E.D. Tex. Mar. 28, 2013) ....................................................11

*In re Adobe, Inc.*,
   823 F. App'x 929 (Fed. Cir. 2020) ...............................................................13, 14

*Aguilar-Ayala v. Ruiz*,
   973 F.2d 411 (5th Cir. 1992) .......................................................................10

*In re Apple Inc.*,
   No. 2020-127, 2020 WL 3249953 (Fed. Cir. 2020) ............................................7

*In re Apple, Inc.*,
   581 F. App'x 886 (Fed. Cir. 2014) ...........................................................7, 10, 11

*Auto-Dril, Inc. v. Nat'l Oilwell Varco, L.P.*,
   No. 6:15-cv-00091, 2016 WL 6909479 (W.D. Tex. Jan. 28, 2016) .....................7, 11

*Collaborative Agreements, LLC. v. Adobe Sys. Inc.*,
   No. 1-14-CV-356, 2015 WL10818739 (W.D. Tex. Aug. 21, 2015) ........................9

*DataQuill, Ltd. v. Apple Inc.*,
   No. 13-ca-706, 2014 WL 2722201 (W.D. Tex. June 13, 2014) .............................14

*Gemalto S.A. v. CPI Card Grp. Inc.*,
   No. 15-CA-0910, 2015 WL 10818740 (W.D. Tex. Dec. 16, 2015) .......................10

*In re Genentech, Inc.*
   566 F.3d 1338 (Fed. Cir. 2009)..............................................................7, 8, 10, 11

*In re Hoffman-La Roche Inc.*,
   587 F.3d 1333 (Fed. Cir. 2009)...............................................................7, 10, 14

*In re HP Inc.*,
   No. 2018-149, 2018 WL 4692486 (Fed. Cir. 2018) .......................................7, 8, 11

*In re Juniper Networks*,
   2021 WL 4343309 (Fed. Cir. 2021)...................................................11, 12, 13, 14

*Koss Corp. v. Plantronics, Inc.*,
   No. 6:20-CV-00663-ADA, 2021 WL 2075685 (W.D. Tex. May 20, 2021) .................8, 9, 10

*In re Nintendo Co., Ltd.*,
589 F.3d 1194 (Fed. Cir. 2009) ........................................................................7, 8

*In re Toyota Motor Corp.*,
747 F.3d 1338 (Fed. Cir. 2014) ........................................................................7, 8

*In re TS Tech USA Corp.*,
551 F.3d. 1315 (Fed. Cir. 2008) ...........................................................................8

*Uniloc USA Inc. v. Box, Inc.*,
No. 1:17-CV-754-LY, 2018 WL 2729202 (W.D. Tex. June 6, 2018) ....................9

*In re Verizon Bus. Network Servs. Inc.*,
635 F.3d 559 (Fed. Cir. 2011) ............................................................................13

*In re Volkswagen AG*,
371 F.3d 201 (5th Cir. 2004) ....................................................................... *passim*

*In re Volkswagen of Am., Inc.*,
545 F.3d 304 (5th Cir. 2008) ..........................................................................6, 13

*XY, LLC v. Trans Ova Genetics, LC*,
No. W-16-CA-00447-RP, 2017 WL 5505340 (W.D. Tex. Apr. 5, 2017) ...............9

**Statutes**

28 U.S.C. § 1400(b) ...................................................................................................8

28 U.S.C. § 1404(a) ................................................................................................1, 6

**Other Authorities**

Fed. R. Civ. P. 45(c)(1)(A) .....................................................................................10

Fed. R. Civ. P. 45(c)(1)(B) .....................................................................................10

WEST/296283953

Pursuant to 28 U.S.C. § 1404(a) and for the reasons demonstrated below, Defendant Hewlett Packard Enterprise Co. ("HPE") respectfully moves to transfer this case filed by Plaintiffs Intellectual Ventures I LLC and Intellectual Ventures II LLC (collectively "IV") to the Northern District of California.

## I.    INTRODUCTION

This case should be heard in the Northern District of California ("NDCA"), not in this District. The most critical factor in the transfer analysis, the location of relevant witnesses, strongly supports transfer. Many HPE employees with knowledge of the design and development of the accused features in this case are located in NDCA, and none are located in this District. IV cannot point to any HPE employees located in this District who would testify at trial about the accused features. Moreover, many of IV's infringement allegations accuse software and hardware features supplied to HPE by third parties, including software provided by Docker and Kubernetes, and features of Broadcom and Qualcomm Wi-Fi chipsets. These third parties are based in California, not Texas. For its part, IV is a non-practicing entity with a principal place of business in Bellevue, Washington, with no known ties to this District. Furthermore, NDCA has a local interest in this case because the accused features were predominantly developed there. And this case is in its early stages, with discovery stayed and the claim construction hearing more than 60 days away. Thus, both the public and private interest factors favor transfer here, and NDCA is a clearly more convenient venue than this District.

## II.    FACTS

IV filed suit on March 9, 2021 accusing HPE of infringing U.S. Patent Nos. 6,618,736 ("the '736 patent"), RE 42,153 ("the '153 patent"), 7,783,788 ("the '788 patent"), RE 44,818 ("the '818 patent"), 6,816,464 ("the '464 patent"), 8,023,991 ("the '991 patent"), and 8,725,132

1

("the '132 patent"). *See* ECF No. 1. IV served its infringement contentions on June 23, 2021, adding additional accused products and features. As described below, many of the accused features are supplied to HPE by third parties, and most of the known, relevant witnesses and sources of proof are concentrated in NDCA, not in this District.

### A.    IV and the Third-Party Inventors.

IV is a Delaware limited liability company with its principal place of business in Bellevue, Washington, and with no known ties to this District. *See* ECF No. 1 ¶¶ 1-2. All but one of the asserted patents (a reissue granted in 2014) were originally assigned to companies other than IV. *See* ECF No. 1, Exs. A-G. From public information, it appears that six of the 20 named inventors are located in NDCA. Declaration of John Williams ("Williams decl."), Ex. A.[1] Only three appear to be located in this District. *Id.* Based on public information, none of the named inventors live or work in the Waco Division of this District. *Id.*

### B.    Hewlett Packard Enterprise Company

HPE is a Delaware corporation formed from the 2015 separation of Hewlett-Packard Company, which was the original Silicon Valley startup.  HPE is in the process of moving its headquarters from NDCA to Houston, Texas (which is in the Southern District of Texas), a process that should complete in the Spring of 2022.  However, that move is irrelevant to this motion as the accused products and features were developed by (1) NDCA-based companies that were acquired by HPE (or its predecessor), as in the case of Aruba, 3PAR, and Silver Peak

---

[1] Declaration of John Williams, attaching Exs. A-M.

2

(Counts III, IV, V, VI, and VII), or (2) California-based third parties, as in the case of Docker,

Kubernetes, Broadcom, and Qualcomm[2] (Counts I, II, VI, and VII).

### C.    IV's Infringement Claims Against HPE and Features Supplied by Third Parties.

Count I of IV's complaint alleges that HPE products integrated with Docker infringe the

'736 patent, including Docker Enterprise Edition, HPE ProLiant servers with Docker integration,

HPE Ezmeral Container Platform with Docker integration, and HPE GreenLake Service for

Containers with Docker integration. *See* ECF No. 1 at ¶ 50.[3] Docker is a software platform of

Docker, Inc., which is headquartered in Palo Alto, California. *See* Ex. C, *Contact Docker*

(https://www.docker.com/company/contact). IV's infringement contentions for the '736 patent

exclusively accuse functionality provided by Docker. *See* Ex. B (Infringement Contentions) at

23-87. Indeed, IV's contentions point solely to Docker's documentation, not HPE's, for each

claim element. *Id.* The '736 patent infringement contentions only reference HPE in noting that

HPE offers products with Docker. *Id.* Thus, many of the expected witnesses and documents

related to the accused functionality for Count I will come from Docker, Inc. in NDCA.

Count II alleges that HPE products integrating Kubernetes open-source software infringe

the '153 patent, including HPE Ezmeral Container Platform, HPE Apollo Servers, and HPE

GreenLake cloud services for containers. *See* ECF No. 1 at ¶ 70. Kubernetes was originally

developed by Google. *See* Ex. D, *What is Kubernetes?*

(https://kubernetes.io/docs/concepts/overview/what-is-kubernetes/). Google is headquartered in

Mountain View, California, in NDCA. *See* Ex. E (10-K). Today, the Kubernetes software is

---

[2] The first three of which are located in NDCA and the latter in the Southern District of California.

[3] In its infringement contentions, IV identified the specific products within each of these categories that it alleges infringe the asserted patents. *See* Ex. B.

3

maintained by the Cloud Native Computing Foundation, which is headquartered in San Francisco, California, in NDCA. *See* Ex. F, *Kubernetes* (https://kubernetes.io/); Ex. G, *Cloud Native Computing Foundation - Contact Us* (https://www.cncf.io/about/contact/). IV's infringement contentions for the '153 patent focus exclusively on functionality provided by the Kubernetes software. *See* Ex. B at 90-166. Thus, many of the expected witnesses and documents related to the accused features for Count II will come from Google and the Cloud Native Computing Foundation in NDCA.

Counts III and IV allege that certain HPE storage systems infringe the '788 and '818 patents, including HPE 3PAR StoreServ products, HPE Primera Storage, and HPE GreenLake storage services implemented with Primera Storage. *See* ECF No. 1 at ¶¶ 92 & 116. HPE's predecessor Hewlett-Packard Company acquired 3PAR and its products in 2010. *See* Ex. H, *HP to Acquire 3PAR* (https://investor.hp.com/news/press-release-details/2010/HP-to-Acquire-3PAR/). At the time of acquisition, 3PAR was headquartered in Fremont, California. *Id.* After the acquisition, many former 3PAR employees continued to work on the 3PAR products (and subsequently the Primera products) in NDCA. Ex. N. The remaining 3PAR employees now work for HPE. *Id.* Thus, many of the expected witnesses and documents related to the accused functionality for Counts III and IV will be located in NDCA.

Count V alleges that HPE's Silver Peak Unity EdgeConnect SD-WAN Edge Platform infringes the '464 patent. *See* ECF No. 1 at ¶ 139. The accused Unity EdgeConnect products were developed by Silver Peak Systems, Inc. ("Silver Peak"). HPE acquired Silver Peak in September 2020, and Silver Peak became part of HPE's Aruba subsidiary. *See* Ex. I, *HPE Completes Acquisition of SD-WAN Leader Silver Peak* (https://www.hpe.com/us/en/newsroom/press-release/2020/09/hpe-completes-acquisition-of-sd-

wan-leader-silver-peak.html). Aruba is headquartered in San Jose, California, in NDCA. *See* Ex. J, *Aruba - Contact Us* (https://www.arubanetworks.com/company/contact-us/). HPE human resources records show that a majority of the employees who joined HPE in the Silver Peak acquisition, including engineering, design, operations, sales, and marketing personnel, continue to live and work in NDCA. *See* Ex. O. While there are a small number of Silver Peak employees in Texas, they consist only of teleworkers, several HR, finance, and business operations employees in Houston, and a single business analyst in Austin. *Id.* None of the engineering or design of Silver Peak products takes place in Texas. Thus, many of the expected witnesses and documents related to the accused functionality for Count V will be located in NDCA.

Count VI alleges that AirMatch and the Adaptive Radio Management ("ARM") feature of Aruba wireless access points infringe the '991 Patent. *See* ECF No. 1 at ¶ 159. Both ARM and AirMatch were developed in Santa Clara, California, not in Texas. Declaration of Eldad Perahia ("Perahia Decl.") at ¶ 6. No HPE employees in Texas work on the design and development of AirMatch, ARM, or Aruba wireless access points. *Id.* at ¶¶ 6-7. Thus, the expected witnesses and documents related to the accused features for Count VI will be in NDCA.

Count VII alleges that the OFDMA and UL MU-MIMO features of Wi-Fi 6 (also known as 802.11ax) infringe the '132 patent. *See* ECF No. 1 at ¶ 178. Broadcom and Qualcomm supply the Wi-Fi chipsets for the Aruba wireless access points. *See* Perahia Decl. at ¶ 8. These Wi-Fi chipsets, along with driver code supplied by the chipset vendor, implement Wi-Fi 6, including OFDMA and/or UL MU-MIMO. *Id.* Broadcom is headquartered in San Jose, California, and Qualcomm is headquartered in San Diego, California. *See* Ex. K, (10-K); Ex. L, (10-K).

An HPE team in NDCA interacts with Broadcom and Qualcomm employees in California to ensure their Wi-Fi chipsets work with the Aruba wireless access points. *See* Perahia Decl. at

¶ 9. HPE engineering teams and employees in the Aruba CTO Wireless Lab perform testing of Broadcom and Qualcomm Wi-Fi chipsets in the Aruba wireless access points in San Jose, California. *Id.* at ¶ 10. Initial interoperability testing of OFDMA and UL MU-MIMO features of Wi-Fi chipsets with the Aruba wireless access points is performed by engineering teams in Santa Clara, California. *Id.* at ¶ 11.

Employees in the Aruba CTO Wireless Lab perform secondary testing of Broadcom and Qualcomm chipsets in the Aruba wireless access points. *Id.* at ¶ 12. This secondary testing is conducted in a lab in Sunnyvale, California. *Id.* HPE does not have similar initial or secondary testing labs for Wi-Fi chipsets in Aruba wireless access points in Texas. *Id.* Thus, the expected witnesses and documents related to the accused functionality for Count VII will be in NDCA.

In summary, the vast majority of relevant information related to the design and development of the accused products is located with the knowledgeable HPE employees or third parties in NDCA or elsewhere in California, not in this District. HPE is not aware of any witnesses or unique sources of proof relevant to the accused functionality in this District.

## III.    LEGAL STANDARD

Under section 1404(a), the moving party must first show that the claims "might have been brought" in the proposed transferee district. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312-13 (5th Cir. 2008) ("*Volkswagen II*"). Second, the movant must show "good cause" by demonstrating that the "transferee venue is clearly more convenient" than the transferor district. *Volkswagen II* at 315. As demonstrated below, both are true here.

In evaluating convenience, the district court weighs both private and public interest factors. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). The private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of

compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id*. The public interest factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id*. The proposed transferee forum is "clearly more convenient" where, as here, most potential witnesses and relevant evidence are concentrated in the transferee district. *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009); *In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1336-37 (Fed. Cir. 2009). The moving party can make the "clearly more convenient" showing even when "the facts here may not show that the California court is far more convenient." *In re HP Inc.*, No. 2018-149, 2018 WL 4692486, at *2 (Fed. Cir. 2018). The transferee venue need only be "*clearly* more convenient," not "*far* more convenient," for transfer to be appropriate. *In re Toyota Motor Corp.*, 747 F.3d 1338, 1341 (Fed. Cir. 2014) (emphasis in original).

The convenience of the witnesses is the most important factor in the transfer analysis. *In re Apple Inc.*, No. 2020-127, 2020 WL 3249953, at *2 (Fed. Cir. 2020); *In re Genentech, Inc*. 566 F.3d 1338, 1343 (Fed. Cir. 2009); *Auto-Dril, Inc. v. Nat'l Oilwell Varco, L.P.*, No. 6:15-cv-00091, 2016 WL 6909479, at *7 (W.D. Tex. Jan. 28, 2016). Moreover, "in a case featuring most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff, the trial court should grant a motion to transfer." *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009); *see also In re Toyota Motor Corp*., 747 F.3d 1338, 1341 (Fed. Cir. 2014); *In re Apple, Inc.*, 581 F. App'x 886, 889 (Fed. Cir. 2014);

7

*Genentech*, 566 F.3d at 1348; *In re TS Tech USA Corp.*, 551 F.3d. 1315, 1322 (Fed. Cir. 2008);

*In re HP Inc.*, No. 2018-149, 2018 WL 4692486, at *3 (Fed. Cir. Sept. 25, 2018).

The presence of witnesses and evidence outside both forums does not factor into the transfer analysis. *See In re Toyota Motor Corp.*, 747 F.3d 1338, 1340 (Fed. Cir. 2014). Likewise, plaintiff's choice of venue is irrelevant, because the "Fifth Circuit forbids treating the plaintiff's choice of venue as a factor in the analysis of a request to transfer." *Nintendo*, 589 F.3d at 1200.

## IV.    ARGUMENT

### A.    This Case Could Have Been Filed in NDCA.

As a threshold matter, HPE's motion to transfer is proper because IV could have filed this case in NDCA. *Volkswagen I*, 371 F.3d at 203. Any patent infringement suit may be brought in "the judicial district where the defendant resides." 28 U.S.C. § 1400(b). Because HPE and its subsidiary Aruba have regular and established places of business in San Jose, California, venue is proper in NDCA. *See* Exs. M & J.

### B.    The Private Interest Factors Favor Transfer to NDCA.

The private interest factors favor transfer to NDCA because the overwhelming majority of witnesses and evidence relevant to this case are located there.

#### 1.    The Relative Ease Of Access To Sources Of Proof Strongly Favors Transfer to NDCA.

"In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009). Here, the presence of third-party evidence in NDCA additionally weighs in favor of transfer. *Koss Corp. v. Plantronics, Inc.*, No. 6:20-CV-00663-ADA, 2021 WL 2075685, at *3 (W.D. Tex. May 20, 2021) ("[Movant]'s showing that additional, third-party documents—Apple's

8

documents—are located in NDCA further tips the scales in favor of transfer."). "In determining the ease of access to sources of proof, the Court will look to the location where the allegedly infringing products were researched, designed, developed and tested." *XY, LLC v. Trans Ova Genetics, LC*, No. W-16-CA-00447-RP, 2017 WL 5505340, at *13 (W.D. Tex. Apr. 5, 2017); *Uniloc USA Inc. v. Box, Inc.*, No. 1:17-CV-754-LY, 2018 WL 2729202, at *3 (W.D. Tex. June 6, 2018) ("It would be more inconvenient for Box to litigate in [WDTX] than for Uniloc to litigate in Northern California"); *Collaborative Agreements, LLC. v. Adobe Sys. Inc.*, No. 1-14-CV-356, 2015 WL10818739 *4 (W.D. Tex. Aug. 21, 2015). That some documents may be accessible in this District, such as via shared network drives, does not weigh against transfer where, as here, the documents themselves are located in NDCA. *Koss*, 2021 WL 2075685, at *3 ("Fifth Circuit precedent makes clear that this factor speaks to the *physical location* of documents; it does not concern the locations from which such documents are accessible.") (emphasis in original).

Here, the HPE accused products and features are primarily designed, developed, and tested in NDCA, not in Texas. *See supra*, Section II.[4] Most relevant HPE witnesses and documents pertaining to the accused features are located in NDCA. Furthermore, third-party suppliers of accused features or products are located in NDCA, including Docker, Inc., the Cloud Native Computing Foundation, and HPE's Wi-Fi chipset supplier Broadcom. *See supra*, Section II. Thus, the bulk of the evidence relevant to IV's infringement allegations is concentrated in NDCA, not in this District. This factor therefore strongly favors transfer.

---

[4] HPE plans to move its corporate headquarters from California to Spring, Texas in 2022. *See* ECF No. 1 at ¶ 3. That fact does not weigh against transfer, because the accused products were and are designed and developed in NDCA, not in this District.

WEST/296283953

### 2.    The Availability of Compulsory Process Strongly Favors Transfer.

The "fact that the transferee venue is a venue with usable subpoena power ... weighs in favor of transfer, and not only slightly." *Genentech*, 566 F.3d at 1345. This factor "weigh[s] heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue." *In re Apple, Inc.*, 581 F. App'x. 886, 889 (Fed. Cir. 2014); *In re Hoffman-La Roche, Inc*., 587 F.3d 1333, 1337-38 (Fed. Cir. 2009). Thus, "the convenience of third-party witnesses is given considerable weight." *Koss*, 2021 WL 2075685, at *4.

A court may subpoena a witness to attend trial only (a) "within 100 miles of where the person resides, is employed, or regularly transacts business in person"; or (b) "within the state where the person resides, is employed, or regularly transacts business in person, if the person … is commanded to attend a trial and would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(A), (B); *Gemalto S.A. v. CPI Card Grp. Inc.*, No. 15-CA-0910, 2015 WL 10818740, at *4 (W.D. Tex. Dec. 16, 2015). And the ability to compel live trial testimony is crucial for evaluating a witness' testimony. *See Aguilar-Ayala v. Ruiz*, 973 F.2d 411, 419 (5th Cir. 1992).

Here, far more relevant third-party witnesses live and work in NDCA than in this District, and none are in the Waco Division. Critically, courts in NDCA can compel the attendance at trial of several third-party witnesses with knowledge of the accused functionality, including witnesses who work for Docker, Inc. (relevant to Count I of IV's complaint), Google and/or the Cloud Native Computing Foundation (relevant to Count II), and HPE's Wi-Fi chipset suppliers Broadcom and Qualcomm (relevant to Count VII), all of whom are based in California. *See supra*, Section II. Those third-party witnesses will have the best knowledge of the accused functionality they supply, and most or all of them live and work in California, not in this District.

10

Thus, courts in NDCA can compel the attendance of nearly all relevant witnesses, while this Court cannot. The fact that HPE does not yet know whether these third-party witnesses will testify at trial without a subpoena does not weigh against transfer. *See In re Juniper Networks*, 2021 WL 4343309, at *6 (Fed. Cir. 2021) ("That no party expressly identified any witness as unwilling to testify, however, does not cut in favor of conducting this litigation in the Western District of Texas rather than in the Northern District of California."). On the other side of the scale, the only third-party witnesses who appear to reside in the Austin Division of this District are three of the 20 named inventors, a group that is far outweighed by the six inventors in NDCA. *See* Ex. A. Thus, this factor strongly favors transfer. *See In re HP*, 2018 WL 4692486, at *3 ("the compulsory process factor should have been weighed in favor of granting transfer rather than neutral" where third party witnesses were located in the transferee district); *see also In re Apple, Inc.*, 581 F. App'x 886, 889 (Fed. Cir. 2014); *Adaptix, Inc. v. HTC Corp.*, 937 F. Supp. 2d 867, 875–76 (E.D. Tex. Mar. 28, 2013) (this factor weighs in favor of transfer when the transferee district has subpoena power over a larger number of witnesses, even if an inventor resides in the transferor district).

### 3.    The Attendance of Willing Witnesses Strongly Favors Transfer.

"The convenience of the witnesses is probably the single most important factor" in the transfer analysis. *Genentech*, 566 F.3d at 1343. To assess this factor, the Fifth Circuit applies the "100 mile rule," which provides that the venue with the shorter average distance for witnesses to travel is favored when two potential venues are more than 100 miles apart. *Volkswagen I*, 371 F.3d at 205; *see also Auto-Dril, Inc. v. Nat'l Oilwell Varco, L.P.*, No. 6:15-cv-00091, 2016 WL 6909479 at *8 (W.D. Tex. Jan. 28, 2016). NDCA is approximately 1,700 miles from Waco,

11

Texas, so the relevant inquiry in comparing the venues is how far the witnesses would be required to travel.

Here, most HPE witnesses familiar with the design and development of the accused features are located in NDCA, and they would face significantly greater travel time, distance, and expense if required to attend trial more than 1,700 miles away in Waco.[5] The convenience of those HPE employee witnesses cannot be discounted merely because they are employees of a party. *See Juniper Networks*, 2021 WL 4343309, at *4 ("We have previously rejected the district court's reliance on the proposition that the convenience-to-the-witnesses factor is attenuated when the witnesses are employees of the party calling them."). Although HPE does have offices in Texas, including in Austin, no known witnesses work in those offices, and none of the accused products or features were developed in Texas. *See supra*, Section II.

Furthermore, the likely third-party witnesses live and work in NDCA or in San Diego, both of which are far closer to the courthouses in NDCA than to Waco. Docker, Inc., the Cloud Native Computing Foundation, and Broadcom all are headquartered and based in NDCA. Qualcomm is headquartered and based in San Diego, which is approximately 450 miles from the San Jose courthouse in NDCA, and travel from San Diego to San Jose is a one-hour direct flight. *See* Declaration of Dawn Jenkins ("Jenkins Decl.") at ¶ 2. On the other hand, Qualcomm's San Diego headquarters is approximately 1,400 miles from the Waco courthouse, and there are no direct flights from anywhere in California to Waco. *Id.* at ¶ 3. And while Broadcom's and

---

[5] HPE's declarant, Eldad Perahia, currently resides in Park City Utah. Perahia decl. at ¶ 3. This fact weighs in favor of transfer to NDCA as Park City, Utah is approximately 1,017 miles from Waco, Texas but only approximately 619 miles from San Francisco, California. Jenkins Decl. at ¶ 4.

Qualcomm's websites identify locations in Austin, Texas, HPE's interactions with those companies have been with their employees in California, not Texas. Perahia decl. at ¶ 9.

Thus, both the HPE witnesses and the expected third-party witnesses will be subjected to additional burden and expense if they are required to travel to Waco for trial. This burden includes not only expense and loss of productivity for those witnesses and their employers, but also the burden of personal time spent away from family and local community commitments. *See In re Verizon Bus. Network Servs. Inc.,* 635 F.3d 559, 561 (Fed. Cir. 2011) (ordering transfer given "stark contrast in convenience and fairness with regard to the identified witnesses"). In these circumstances, "personal costs associated with being away from work, family, and community" strongly favor transfer. *Volkswagen II*, 545 F.3d at 317.

### 4. The "All Other Practical Problems" Factor Is Neutral Or Slightly Favors Transfer.

There are no practical problems that weigh against transfer here. The case is in its early stages, with discovery stayed and more than 60 days remaining until the scheduled claim construction hearing. Transferring the case to NDCA now would not disrupt the progress of the case or cause significant delay. Thus, this factor is either neutral or slightly favors transfer.

### C. The Public Interest Factors Favor Transfer to NDCA.

### 1. There Are No Administrative Difficulties Stemming from Court Congestion that Weigh Against Transfer to NDCA.

"Th[is] factor concerns whether there is an appreciable difference in docket congestion between the two forums." *In re Adobe, Inc.*, 823 F. App'x 929, 932 (Fed. Cir. 2020). The Federal Circuit recently noted that "the Western District of Texas and the Northern District of California show no significant differences in caseload or time-to-trial statistics." *Juniper Networks*, 2021 WL 4343309, at *6. Absent a notable difference in congestion between the two districts, this factor is neutral, even if this District's proposed schedule would attempt to resolve the case at a

13

faster pace. *See id.* ("[W]e have held that it is improper to assess the court congestion factor based on the fact that the Western District of Texas has employed an aggressive scheduling order"); *Adobe*, 823 F. App'x at 932 ("Nothing about the court's general ability to set a schedule directly speaks to that issue."). And the ability of this Court to resolve the case more quickly is not sufficient to deny transfer "with several factors favoring transfer and nothing else favoring retaining this case in Western Texas." *Id.* Thus, this factor is neutral.

### 2.    The Local Interest Factor Favors Transfer to NDCA.

The local interest factor takes into account the preference to have localized interests decided at home. *Volkswagen I*, 371 F.3d at 206. This factor addresses the "factual connection" a case has with the transferee and transferor venues. *See id; see also Juniper Networks*, 2021 WL 4343309, at *5 (this factor "regards the significant connections between a particular venue and *the events that gave rise to a suit*") (emphasis in original). The Fifth Circuit instructs that "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Volkswagen I*, 371 F.3d at 206. The present case has a far greater factual connection to NDCA than to this District, making it more proper that the case be decided by a locally interested California jury than a jury of Texans with no local connection to the community in which the allegedly infringing products originated.

The accused products and features were designed and developed primarily in NDCA, giving that district a greater local interest in the resolution of this case. Where, as here, the accused features were "developed and tested" predominantly in NDCA, and because this suit "calls into question the work and reputation of several individuals residing" in that district, NDCA's interest in this matter is "self-evident." *See Hoffman-La Roche,* 587 F.3d at 1336; *DataQuill, Ltd. v. Apple Inc.*, No. 13-ca-706, 2014 WL 2722201, at *4 (W.D. Tex. June 13,

2014) (local interest favored transfer notwithstanding Apple's Austin presence because "this case is about Apple's actions in designing and developing the iPhone and some of its software products, all of which happened in Cupertino").

       **3.**     **Familiarity With The Governing Law And Conflicts Of Law Are Neutral.**

Both this District and NDCA are familiar with federal patent law, so the third public interest factor is neutral. Furthermore, there are no issues pertaining to conflicts of law or the application of foreign law here, so the fourth public interest factor also is neutral.

## V.    CONCLUSION

Because this case could have been brought in NDCA, and because both the private and public interest factors weigh in favor of transfer, HPE respectfully requests that the Court transfer this case to NDCA.

Dated: October 8, 2021

Respectfully submitted,

*/s/ Sean C. Cunningham*
John M. Guaragna (Bar No. 24043308)
**DLA PIPER LLP (US)**
401 Congress Avenue, Suite 2500
Austin, TX 78701-3799
Telephone: (512) 457-7000
Facsimile: (512) 457-7001
john.guaragna@us.dlapiper.com

Dawn M. Jenkins (Bar No. 24074484)
**DLA PIPER LLP (US)**
1000 Louisiana Street, Suite 2800
Houston, TX 77002-5005
Telephone: (713) 425-8400
Facsimile: (713) 425-8401
dawn.jenkins@us.dlapiper.com

Sean C. Cunningham (*pro hac vice*)
Erin P. Gibson (*pro hac vice*)
Tiffany C. Miller (*pro hac vice*)

15

**DLA PIPER LLP (US)**
401 B Street, Suite 1700
San Diego, CA 92101
Telephone: (619) 699-2700
Facsimile: (619) 699-2701
sean.cunningham@us.dlapiper.com
erin.gibson@us.dlapiper.com
tiffany.miller@us.dlapiper.com

Jonathan H. Hicks (*pro hac vice*)
Brent K. Yamashita (*pro hac vice*)
**DLA PIPER LLP (US)**
2000 University Avenue
East Palo Alto, CA 94303
Telephone: (650) 833.2000
Facsimile: (650) 833.2001
jonathan.hicks@us.dlapiper.com
brent.yamashita@us.dlapiper.com

Peter F. Nelson (*pro hac vice*)
**DLA PIPER LLP (US)**
500 8th Street NW
Washington, D.C. 20004
Telephone: (202) 799.4092
Facsimile: (202) 799.5000
peter.nelson@us.dlapiper.com

Barry K. Shelton (Bar No. 24055029)
**SHELTON COBURN LLP**
311 RR 620, Suite 205
Austin, TX 78734-4775
Telephone: (512) 263-2165
Facsimile: (512) 263-2166
bshelton@sheltoncoburn.com

**ATTORNEYS FOR DEFENDANT
HEWLETT PACKARD ENTERPRISE
COMPANY**

16

## **CERTIFICATE OF CONFERENCE**

Pursuant to Local Rule CV-7(i), counsel for Hewlett Packard Enterprise Company has conferred with counsel for Plaintiff in a good-faith effort to resolve the matter presented herein. Counsel for Plaintiff opposes the instant Motion.

*/s/ Sean C. Cunningham*
Sean C. Cunningham

## **CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served on October 8, 2021, with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).  Any other counsel of record will be served by electronic mail on this same date.

*/s/ Sean C. Cunningham*
Sean C. Cunningham

17